Entered on Docket September 13, 2023

Below is a Memorandum Decision of the Court.

_____
**Mary Jo Heston**
**U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br>ARLA MENDENHALL,<br>           Mendenhall. | Case No. 22-40902-MJH |
| HELEN H. KIM,<br>           Plaintiff<br>v.<br>ARLA MENDENHALL,<br>           Defendant | Adversary No. 22-04031-MJH<br><br>**MEMORANDUM DECISION ON DEFENDANT'S MOTION TO DISMISS** |

This matter came before the Court on August 24, 2023, on Defendant Arla Mendenhall's ("Mendenhall") June 20, 2023 motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) applicable through Federal Rule of Bankruptcy Procedure 7012[1] (the "12(b)(6) Motion"). Plaintiff Helen H. Kim ("Kim") filed a response opposing the 12(b)(6) Motion.

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Federal Bankruptcy Code, 11 U.S.C. § 101–1532, and to the Federal Rules of Bankruptcy Procedure, 1001–9037.

The Court took the (12)(b)(6) Motion under advisement. On August 28, 2023, the Court entered an order requesting authentication of exhibits that Mendenhall filed in support of the 12(b)(6) Motion. Both Parties filed pleadings addressing the authenticity of Mendenhall's exhibits. The Court, having considered the arguments of counsel, the pleadings, and the record for the 12(b)(6) Motion as set forth below, states its opinion is as follows:

## I. PROCEDURAL BACKGROUND ISSUES

### A. Motions and Hearings

Mendenhall filed chapter 7 bankruptcy on July 25, 2022.[2] On October 21, 2022, Kim filed this adversary proceeding, seeking to declare her claim nondischargeable under § 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6). Pl.'s Compl. 4:2-4:18, ECF No. 1.

On November 9, 2022, Mendenhall filed an answer. Def's Answer, ECF No. 4. On April 11, 2023, Mendenhall filed a "Motion for Judgment on the Pleadings and Motion to Extend Trial Related Deadlines" (the "12(c) Motion"). Def's Mot. J., ECF No. 11. On April 24, 2023, Kim filed her response to the 12(c) Motion, Pl.'s Answer to Def's Mot. J., ECF No. 14, and on May 2, 2023, the Court heard oral argument on the 12(c) Motion. At the hearing, on the 12(c) Motion, the Court noted that it agreed that Kim had substantially failed to plead fraud with particularity in her original complaint, Kim had not factually supported her claims under § 523(a)(2)(B) or 523(a)(6), and Kim had not alleged a link between Mendenhall and Kim under which liability could be imputed upon her under the Supreme Court's recent holding in *Bartenwerfer v. Buckley*, 598 U.S. 69, 83-84 (2023) ("*Bartenwerfer*"). The Court did not rule on the 12(c) Motion, struck the scheduled trial date, and gave Kim 30 days leave to amend her complaint.

---

[2] Bank. Case No. 22-40902-MJH.

On June 8, 2023, Kim filed an amended complaint, which alleged substantially the same facts as the original complaint but removed the claims under § 523(a)(2)(B) and 523(a)(6), leaving her sole claim under § 523(a)(2)(A) (the "Amended Complaint"). Pl.'s Am. Compl. 5:4-5:25, ECF No. 18.

On June 20, 2023, Mendenhall filed the 12(b)(6) Motion. Def's Mot. to Dismiss, ECF No. 20. Kim filed a response, and Mendenhall filed a reply. On August 24, 2023, the Court heard oral argument on the 12(b)(6) Motion.[3] The Court noted the same deficiencies in the Amended Complaint as noted in the earlier hearing on the original complaint and offered Kim's counsel the opportunity to brief the issue of imputation of liability on Mendenhall, which was declined. The Court took the matter under advisement.

After the hearing, the Court issued an order requesting Mendenhall's counsel file a declaration authenticating the exhibits Mendenhall included with the 12(b)(6) Motion and providing Kim's counsel an opportunity to respond to the authentication of such exhibits. Order, ECF No. 28. On August 31, 2023, Mendenhall's counsel filed declarations of authentication pursuant to Federal Rules of Evidence ("FRE") 901 and 902. Def.'s Decl. of Authentication, ECF No. 29-31. Kim filed a response, and Mendenhall filed a reply. Pl.'s Resp. to Def.'s Decl. of Authentication, ECF No. 32.; Def's Reply in Supp. of Decl. of Authentication, ECF No. 33.

**B. Is a 12(b)(6) Motion Proper in this Instance?**

The initial procedural question is whether Mendenhall may file a motion to dismiss under FRCP 12(b)(6) after filing an answer to Kim's original complaint but before filing an answer to the Amended Complaint. Although neither party objected to the timeliness of the 12(b)(6) Motion, the Court considers whether the filing of a 12(b)(6) Motion is proper under the circumstances.

---

[3] Oral argument on the 12(b)(6) Motion was continued by the parties on July 10, 2023, to July 25, 2023, and then to August 24, 2023.

FRCP 12(g)(2) states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." FRCP 12(g)(2). FRCP 12(h)(2) provides an exception to FRCP 12(g)(2). In relevant part, FRCP 12(h)(2) states that "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . in any pleading allowed or ordered under Rule 7(a) . . . by a motion under Rule 12(c); or . . . at trial." FRCP 12(h)(2).

Scant caselaw in the Ninth Circuit exists to answer whether an amended complaint allows a defendant to file a motion to dismiss after they have filed an answer or responsive pleading to the original complaint. However, in *Adesanya v. I.N.S.*, 996 F.2d 1223 (9th Cir. 1993), the Ninth Circuit Court of Appeals affirmed a district court's consideration of a motion to dismiss an amended complaint because it was made "before pleading [when] a further pleading [was] permitted" where the defendant had previously filed an answer and motion for summary judgment to the original complaint. Some courts and treatises also have entertained post-answer motions to dismiss amended complaints for reasons of judicial economy or other factors. *See Best Fresh LLC v. Vantaggio Farming Corp.*, No. 321CV00131BENWVG, 2022 WL 4112231, at *10 (S.D. Cal. Sept. 8, 2022) ("[C]ertain district courts have entertained post-answer motions to dismiss amended complaints for the purpose of judicial economy or based on distinguishing factors."); Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1388 (3d ed. 2004); *see also Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) ("Analysis under Rule 12(c) is "substantially identical" to analysis under Rule 12(b)(6)"); *Parra, Tr. of Laura E. Parra Revocable Tr. Dated Sept. 9, 1994, v. Parra*, No. 20-CV-839-DMS-JLB, 2021 WL 2038323, at *3 (S.D. Cal. May 20, 2021) ("Given this analogous standard . . . and the judicial economy considerations with respect to the . . . pending motion to dismiss, the [c]ourt will address Defendants' motion now.").

The Court finds that the principles of judicial economy, the similarity of legal standards for deciding a 12(b)(6) motion and a 12(c) motion, the fact that Mendenhall has not answered the Amended Complaint, and the fact that the parties have failed to raise

the issue in the respective pleadings all support the Court's consideration of the 12(b)(6) Motion in this case.

**C. Record on the 12(b)(6) Motion**

Mendenhall submitted a declaration containing factual assertions (the "Declaration") and attached the following three (3) exhibits in support of the 12(b)(6) Motion, which Mendenhall authenticated in accordance with FRE 901 and 902, in connection with the 12(b)(6) Motion: 1) Exhibit A including search results obtained from the State of Washington Secretary of State Corporations and Charities Filing System ("CCFS") for "Exterior Repair Co LLC," a business license issued by the State of Washington Department of Revenue for "Exterior Repair Co LLC," and a Washington State Department of Labor & Industries Bond History search result for "Exterior Repair Co LLC" ("Exhibit A"). Def's Mot. to Dismiss Ex. A, ECF No. 20-2. Exhibit B, the proposal between Kim and Exterior Repair Co., LLC for the repairs to Kim's home (the "Proposal") ("Exhibit B"), Def's Mot. to Dismiss Ex. B, ECF No. 20-3. Exhibit C contains Kim's complaint from Cowlitz County Superior Court, case number 20-2-00715-08 ("Exhibit C"), Def's Mot. to Dismiss Ex. C, ECF No. 20-4, (collectively, Exhibits A, B, and C shall be referred to as the "Exhibits").

Kim asserts that it is improper for the Court to consider the Declaration or the Exhibits for the 12(b)(6) Motion because they are outside the pleadings. Pl.'s Resp. to Def.'s Decl. of Authentication 2:1-2:14. Furthermore, Kim asserts that to the extent the Court does consider the documents, the Court must treat the matter as a motion for summary judgment under FRCP 56, as required by FRCP 12(d). Pl.'s Resp. to Def.'s Decl. of Authentication 2:1-2:14. The Court considers whether it shall include the Declaration and the Exhibits as part of the record for the 12(b)(6) Motion.

The general rule is that courts may only consider material within the pleadings when assessing the sufficiency of a complaint under FRCP 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Normally, when a court considers matters outside the

pleading, it converts the 12(b)(6) motion into a motion for summary judgment under FRCP 56. *See* FRCP 12(d). Two exceptions to this general rule include the incorporation-by-reference doctrine and the taking of judicial notice under FRE 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Under the incorporation by reference doctrine, a defendant may offer a document to be incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). When offered by a defendant, "the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under [FRCP] 12(b)(6)." *Id*. The document must be extensively referred to in the plaintiff's complaint; "the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citing *Ritchie*, 342 F.3d at 908–09).

Under FRE 201, courts may take judicial notice of adjudicative facts not subject to reasonable dispute. *Ritchie*, 342 at 908; FRE 201(b). Facts are indisputable and thus subject to judicial notice only if they are either generally known or capable of accurate and ready determination by resorting to sources whose accuracy cannot be reasonably questioned under FRE 201(b). *Id*. The Ninth Circuit and other circuits hold that FRE 201 permits a court to take judicial notice of matters of public record, including state court complaints and other filed pleadings. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citing *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 (9th Cir.2002)); *see also Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649 (11th Cir. 2020); *Moore v. Estelle*, 526 F.2d 690, 694 (5th Cir. 1976) (The court may take judicial notice of state petitions, even when the prior case is not made part of the record.). However, when a court takes judicial notice, it may do so not for the truth of the facts recited therein but for its existence, which is not subject to reasonable dispute over its authenticity. *Lee*, 250 F.3d at 690.

The Declaration includes statements that address factual issues central to the parties' dispute, which are not within the scope of the foregoing two exceptions. Accordingly, the Court is not considering the Declaration for the purposes of the 12(b)(6) Motion.

Exhibit A contains authenticated copies of public records obtained from websites maintained by the State of Washington that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201. Accordingly, the Court takes judicial notice of Exhibit A for the 12(b)(6) Motion.

The Court finds that Exhibit B is extensively referred to and is the central basis for Kim's claims under the Amended Complaint. Indeed, Kim references the Proposal throughout her Amended Complaint, and a breach of the Proposal is the underlying basis of Kim's nondischargeability claims against Mendenhall. Furthermore, Exhibit B is an exact copy of the Proposal that Kim attached as an exhibit in her Cowlitz County complaint that preceded this case. Def's Mot. to Dismiss Ex. C No. F. For the 12(b)(6) Motion, the Court considers Exhibit B as incorporated by reference because of Kim's extensive reference.

Exhibit C contains an authenticated copy of Kim's complaint from the Cowlitz County Superior Court case. FRE 201 permits the Court to take judicial notice of matters of public record, including state court complaints. *Harris*, 682 F.3d at 1132. Accordingly, the Court takes judicial notice of Exhibit C for the 12(b)(6) Motion.

Based on the foregoing, the Court declines to treat the Motion as one for summary judgment and may consider the Exhibits as part of the record in connection with the 12(b)(6) Motion. However, the Court's consideration of Exhibit A and Exhibit C are subject to the limitations of FRE 201. The Court may only take judicial notice of the existence of, but not for, the truth of the facts contained within.

## II. BACKGROUND

**A. Factual Background Regarding the Kim Transactions.**

In 2016, Mendenhall's daughter, Lisa Moore, and her son-in-law, James Moore (collectively the "Moores"), incorporated a general contracting business in the State of Oregon, named Exterior Repair Co., LLC, an Oregon limited liability company ("Exterior Oregon"). Pl.'s Am. Compl., ECF No. 18 ¶ 7. The Moores were the sole members of Exterior Oregon. Pl.'s Am. Compl. ¶ 8. Exterior Oregon was not licensed to conduct business in Washington. Pl.'s Am. Compl. ¶ 9. Mendenhall was never a member nor held any interest in Exterior Oregon. Pl.'s Am. Compl. ¶ 10.

On June 5, 2018, Mendenhall formed a general contracting business in the State of Washington known as Exterior Repair Co., LLC, a Washington limited liability company ("Exterior Washington"). Pl.'s Am. Compl. ¶ 11. Mendenhall was the sole member of Exterior Washington, and the Moores were never members nor held any interest in Exterior Washington. Def's Mot. to Dismiss Ex. A; Pl.'s Am. Compl. ¶ 13. The alleged purpose of Exterior Washington was to aid the Moores in conducting business within the State of Washington. Pl.'s Am. Compl. ¶ 12. The parties do not dispute that Mendenhall created Exterior Washington to "allow" the Moores to conduct business in Washington. Neither the Amended Complaint nor the Exhibits allege what the extent of Mendenhall's involvement in Exterior Washington was other than that she created Exterior Washington and opened a bank account on behalf of Exterior Washington.

On October 18, 2018, Kim met with the Moores to discuss repairs to her home in Kelso, Washington. Pl.'s Am. Compl. ¶ 14. The Moores created a Proposal for Kim executed by "James Moore – Exterior Repair Co llc." Pl.'s Am. Compl. ¶¶ 14-15; Def's Mot. to Dismiss Ex. B. The Proposal lists Exterior Oregon's Construction Contractor's Board (CCB) number 212830, James Moore's phone number, and a line for a Washington Labor & Industries number. Def's Mot. to Dismiss Ex. B 2. No specific L&I number is listed. Def's Mot. to Dismiss Ex. B 2. The Proposal contemplates repairs to Kim's home totaling $87,250.00 *plus* Washington State Sales Tax, abbreviated as "WSST." Pl.'s Am. Compl. ¶ 16; Def's Mot. to Dismiss Ex. B 3-5.

On November 05, 2018, Kim paid the Moores by check $18,250.00 as a down payment for the work described in the Proposal. Pl.'s Am. Compl. ¶ 17. The Moores deposited the check into Bank of America account #8298, owned by Exterior Oregon. Pl.'s Am. Compl. ¶ 18. The Moores were the sole signatories on the account owned by Exterior Oregon. Pl.'s Am. Compl. ¶ 19. Kim alleges that she made the following payments to the Moores in 2018 and 2019, which were also deposited into Exterior Oregon's Bank of America account:

(1) On January 3, 2019, for $10,820.00.

(2) On February 6, 2019, for $12,431.50.

(3) On March 12, 2019, for $54,050.00.

(4) On April 1, 2019, for $39,997.00.

(5) On April 30, 2019, for $39,997.00.

(6) On May 20, 2019, for $48,645.00; and

(7) On June 20, 2019, for $43,240.00.

Pl.'s Am. Compl. ¶¶ 20-26.

On June 19, 2019, Kim alleges that she notified the Moores of issues pertaining to work performed on her residence, alleging failures in workmanship. Pl.'s Am. Compl. ¶ 27. Kim alleges that on July 22, 2019, $48,000.00 held in Exterior Oregon's account was transferred into the account owned by Exterior Washington. Pl.'s Am. Compl. ¶ 28. Notwithstanding Kim's notification on June 19, 2019, Kim alleges that she continued to make payments to the Moores on August 19, 2019, for $17,836.50 and On November 8, 2019, for $13,512.50, which were deposited into an account owned by Exterior Washington. Pl.'s Am. Compl. ¶¶ 29-30.

In January 2020, the State of Oregon administratively dissolved Exterior Oregon. Pl.'s Am. Compl. ¶ 31. On July 29, 2020, after the dissolution of Exterior Oregon, Kim made another payment of $25,000, which was deposited into an account owned by Exterior Washington. Pl.'s Am. Compl. ¶ 32. Kim alleges that "Exterior issued a written invoice in the amount of each of the payments that Ms. Kim made out to Exterior" and that "[e]ach

invoice issued by Exterior included a line item for Washington State sales tax." Pl.'s Am. Compl. ¶¶ 33-34. Kim alleges that she paid the Moores a total sum of $323,779.50, $56,349.00 of which was either transferred or deposited into an account owned by Exterior Washington. Pl.'s Am. Compl. ¶¶ 36-37.

Kim alleges that the work was unsatisfactory, and despite demands to complete the work outlined in the Proposal, Exterior Washington filed a materialman's lien against Kim's property for $25,144.00 on August 17, 2020. Pl.'s Am. Compl. ¶¶ 38-39; Def's Mot. to Dismiss Ex. C).

## B. Factual Allegations Regarding Mendenhall's Actions Added to the Amended Complaint.

The Amended Complaint adds new allegations to the original complaint asserting that Mendenhall's discovery responses and answer to the Original Complaint state that:
1) Exterior Washington has been dissolved, did not maintain financial records, had never contracted with Kim, or received any funds from Kim; and 2) that She was unable to turn over Exterior Washington's business records or account for disbursements of funds, as she did not run the business or keep any of the records. Pl.'s Am. Compl. ¶¶ 41-43; Def's Answer).[4] Based on Mendenhall's responses, Kim alleges that Mendenhall has failed to account for the disbursement of funds paid by Kim. Pl.'s Am. Compl. ¶¶41-43.

The Amended Complaint further adds the following allegations to support the § 523(a)(2)(A) claim for relief:

> 44. [Mendenhall] . . . **allowed** her [the Moores], by incorporating Exterior Washington, to represent to [Kim] that Exterior was a licensed and bonded general contractor in the State of Washington, authorized to conduct business in the State of Washington and authorized to collect sales tax in the State of Washington, a representation that the [Mendenhall] knew or should have known was false given the defendant/Mendenhall's statement that [Kim] did not contract with Exterior Washington.

---

[4] Paragraphs 41-43 contain the only new factual allegations included in the Amended Complaint.

45. [Mendenhall] . . . **allowed** [the Moores], by incorporating Exterior Washington, to issue invoices to [Kim] for work that was not completed or completed in a non-competent or workmanlike manner, invoices that the [Mendenhall] knew or should have known were false and misleading.

46. [Mendenhall] . . . **allowed** [the Moores], by incorporating Exterior Washington, to obtain funds from [Kim] and deposit those funds in the bank account of Exterior Oregon, a company not licensed to do business in the State of Washington, for work that was allegedly completed on [Kim's] residence . . ..

47. [Kim] reasonably relied on the representations of [the Moores] in entering into the contract to allow Exterior to undertake repairs to [Kim's] residence . . ..

48. [Kim] reasonably relied on the invoices that were sent and/or provided to her by [the Moores].

49. [Mendenhall] **allowed** [the Moores], by incorporating Exterior Washington, to obtain funds by false pretenses, false representations, and/or fraud from [Kim] by failing to complete the scope of work contracted for and by failing to account for the disbursement of funds paid by [Kim] and [Kim's] claim against [Mendenhall] is non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A).

Pl.'s Am. Compl. ¶¶ 44-49 (emphasis added).

### C. The State Court Suit Against Exterior Oregon, Exterior Washington, the Moores, and Mendenhall.

Kim commenced an action in Cowlitz County Superior Court, case number 20-2-00715-08, against Mendenhall, the Moores, Exterior Oregon, Exterior Washington, Navigators Insurance Company, and Construction Notice Services, Inc., for Quiet Title and damages pertaining to the Proposal (the "State Court Action"). Pl.'s Am. Compl. ¶ 40; Def's Mot. to Dismiss Ex. C. The causes of action Kim alleged in the State Court Action were Breach of Contract, Unreasonable Delay & Damages, Negligent Misrepresentation, Declaratory Judgment Concerning the Contracting Party, Violations of Consumer Protection Act, and Slander of Title. Def's Mot. to Dismiss Ex. C.

## III. DISCUSSION

**A. Applicable Legal Standard to a Rule 12(b)(6) Motion**

Under FRCP 12(b)(6) applicable to this proceeding pursuant to FRBP 7012, a claim for relief may be dismissed for "failure to state a claim upon which relief can be granted." FRCP 12(b)(6). *In Bell Atlantic Corp. v. Twombly*, the Supreme Court held that a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. The Supreme Court later clarified that the *Twombly* plausibility standard applies to all civil suits filed in federal courts and identifies two "working principles" underlying *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "First, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . *be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.*" *Id*. at 679 (emphasis added).

For such a motion, all allegations of material fact are considered true and construed in the light most favorable to the nonmoving party. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). A complaint merely reciting statutory language does not plead facts sufficient to state a claim. *Kubick v. FDIC* (*In re Kubick*), 171 B.R. 658, 660 (9th Cir. BAP 1994). A plaintiff's conclusory, unsupported allegations may be disregarded. *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992). Moreover, a complaint must allege sufficient facts "to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Where an amendment cannot save a complaint, dismissal without leave to amend is proper. *Intri-*

*Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (quoting *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)).

### B. § 523(a)(2)(A) Cause of Action

#### 1. Elements in general.

Under § 523(a)(2)(A), "a discharge under section 727 . . . does not discharge an individual defendant from any debt-- for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the defendant's or an insider's financial condition." In the Ninth Circuit, to except a debt from discharge under § 523(a)(2)(A), a creditor must prove by a preponderance of the evidence the following five elements:

> (1) that false representations were made.
> (2) that at the time made, the representations were known to be false.
> (3) that the representations were made with the intention and purpose of deceiving the creditor.
> (4) that the creditor relied on such representations; [and]
> (5) that the creditor sustained the alleged loss and damage as the proximate result of such misrepresentations.

*See In re Sabban*, 600 F.3d 1219, 1222 (9th Cir. 2010) (quoting *Am. Express Travel Related Servs. Co. v. Hashemi* (*In re Hashemi*), 104 F.3d 1122, 1125 (9th Cir. 1996)).

#### 2. Requirements for pleading fraud under Rule 9(b).

Claims for relief under § 523(a)(2)(A) generally involve allegations of fraud and, therefore, must be pleaded with particularity in accordance with the requirements of FRCP 9(b). A motion to dismiss a complaint or claim "grounded in fraud" under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

MEMORANDUM DECISION ON DEFENDANT'S MOTION TO DISMISS – 13
Case 22-04031-MJH    Doc 34    Filed 09/13/23    Ent. 09/13/23 14:23:34    Pg. 13 of 20

To satisfy FRCP 9(b), allegations of fraud must be "'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner*, 6 F.3d at 672; *see also Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.").

As more fully set forth below, the Amended Complaint fails to state a claim for relief based on its: 1) failure to plead fraud with particularity; 2) failure to meet the required elements under § 523(a)(2)(A); and 3) failure to plead facts sufficient to support a viable claim imputing any liability to Mendenhall, the principal of Exterior Washington.

### C. The Amended Complaint Fails to Plead Fraud with Particularity and Fails to State a Plausible Claim for Relief Against Anyone, Including Mendenhall.

*1. Introduction.*

The factual allegations contained in the Amended Complaint regarding the Proposal and the work performed in connection with the Proposal on Kim's home are substantially the same as those in the State Court Complaint filed approximately thirty months earlier. *Compare* Pl.'s Am. Compl. ¶¶ 7-39 to Def's Mot. to Dismiss Ex. C. While these allegations are sufficient to show a breach of contract claim, they do not support a claim for relief under § 523(a)(2)(A). This is especially so here where Kim is seeking relief against Mendenhall, a person who undisputedly had no interaction with Kim in connection with either the Proposal or the work performed under the Proposal, is not alleged to be a contracting party under the Proposal, is the sole member of Exterior Washington, and who has no alleged involvement in Exterior Oregon. *See generally In re Jercich,* 238 F.3d

1202, 1205 (9th Cir. 2001) (An intentional breach of contract generally will not give rise to a nondischargeable debt).

In sum, to state a plausible claim under § 523(a)(2)(A) against Mendenhall, Kim must allege sufficient facts showing that (1) material misrepresentations were made by a person acting as a partner or agent of Mendenhall, the sole member of Exterior Washington; (2) for the purpose of intentionally deceiving Kim; (3) which misrepresentations Kim justifiably relied upon; and (4) were the proximate cause of her injury.

### *2. The Amended Complaint fails to plead sufficient facts with particularity to support a claim of fraud or fraudulent misrepresentation under § 523(a)(2)(A) against any person.*

Even under the most strained and favorable construction of the Amended Complaint in favor of Kim, it is clear that the alleged facts fail to sufficiently specifically plead that *anyone* (let alone Mendenhall or some agent or partner of Mendenhall) knowingly made materially false representations that Kim relied upon and were the proximate cause of her alleged damages. The only alleged misrepresentation that could be construed as intentional is that contained in Paragraph 44 of the Amended Complaint, which alleges that the Moores (i.e., the principals of Exterior Oregon) misrepresented to Kim that "Exterior" was licensed, bonded, authorized to conduct business, and authorized to collect sales tax in Washington. To the extent that the Court construes the Amended Complaint as alleging that Kim contracted with Exterior Washington or with both Exterior Washington and Exterior Oregon (i.e., under the construction that use of Exterior or Exterior Repair Co., LLC refers to both Exterior Washington and Exterior Oregon), these statements simply are not misrepresentations because Exterior Washington was in fact licensed and bonded, and thus could both conduct business in Washington and collect Washington sales taxes. Def's Mot. to Dismiss Ex. A.

Second, to the extent that the Court construes Paragraph 44 as meaning that Kim contracted *only* with Exterior Oregon under the Proposal, such a construction is wholly

inconsistent with the remaining allegations of the Complaint, which are written to create an inference that the contracting party included Exterior Washington (i.e., through the Amended Complaint's ambiguous use of "Exterior). Furthermore, such a construction substantially, if not entirely, destroys any potential connection between Kim's damages and Mendenhall, who was neither an owner nor contractor nor had any alleged involvement in relation to Exterior Oregon. Kim cannot have it both ways.

Additionally, even if the Court determined that the allegations of Paragraph 44 constitute a material intentional misrepresentation, the Amended Complaint fails to show how the Moores' statements regarding being licensed in the State of Washington are the proximate cause of Kim's injuries, which appear to be based upon on the quality and completeness of the work. *In re Sabban*, 384 B.R. 1, 6 (9th Cir. BAP 2008) (citing *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998)) (holding that a debtor need not "obtain" or receive money or property fraudulently to establish a proximate cause, but the liability must "arise from" the fraud to be nondischargeable).

In sum, the allegations contained in Paragraph 44 do not state a plausible claim for relief under § 523(a)(2)(A) against any person.

The remaining allegations in the Amended Complaint, including those contained in Paragraphs 45 through 49, likewise fail to support a claim for relief with the particularity required by FRCP 9(b) (by any person) under §523(a)(2)(A). Specifically, Paragraph 45 refers generally to the issuance of invoices for incomplete and unworkmanlike work. While this supports the breach of contract claim, it does not support a fraudulent misrepresentation claim as it does not allege the particulars of "what" or the "how" of the misconduct charged. *See Vess*, 317 F.3d at 1106; *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1409 (9th Cir. 1996) (To plead with particularity, the plaintiff must set forth what is false or misleading about a statement and why it is false.). Likewise, Paragraph 46 does not include an allegation of fraud but rather involves the location of the deposit of some of the funds Kim paid for the work performed on her house. This paragraph further fails to show

the link between such deposits, even if fraudulent, and Kim's alleged damages. Finally, Paragraphs 47, 48, and most of 49, alleging a failure to account for Kim's funds, are merely conclusory statements related to the elements of a 523(a)(2)(A) claim, which do not suffice to support a claim for relief. *See Iqbal* 556 U.S. at 678; *see also Holden*, 978 F.2d at 1121.

In conclusion, Kim's Amended Complaint has failed to plead with specificity as FRCP 9(b) requires. The Amended Complaint fails to allege that anybody involved in the transactions with Kim intentionally made any fraudulent or false misrepresentations to deceive Kim that she could have justifiably relied upon, which were the proximate cause of her alleged injuries. The most plausible inference that the Court may draw from the Amended Complaint is that the Moores breached their agreement with Kim. However, the Court cannot conclude that anyone intentionally made false or misleading representations to her. Accordingly, Kim has failed to plead a sufficient cognizable legal theory of recovery under § 523(a)(2)(A) against any person, including the Moores, Mendenhall, Exterior Oregon, or Exterior Washington.

### 3. *The Amended Complaint fails to plead facts supporting any plausible basis for imputing liability to Mendenhall.*

Even if the Court were to find that Kim's Amended Complaint did plead a cognizable claim under 523(a)(2)(A) against the Moores, Exterior Oregon, or Exterior Washington, Kim must also assert sufficient facts to show how such liability is to be imputed to Mendenhall, the sole LLC member of Exterior Washington. *See Bartenwerfer*, 598 U.S. 83-84. As noted in the concurring opinions in *Bartenwerfer*, to prevail in a derivative § 523(a)(2)(A) claim, a plaintiff must show the existence of a partnership, principal-agent relationship, or some other theory of liability under state law that would hold a party indirectly liable for fraud committed by another.

Kim has alleged that Mendenhall was the sole LLC member of Exterior Washington but has not asserted any association with Exterior Oregon apart from Mendenhall's familial relationship with the Moores. As *Bartenwerfer* and prior case law instruct, to

impute a nondischargeable debt upon Mendenhall personally, an earlier partnership, agency relationship, or some other link under state law between the Moores and Mendenhall via Exterior Washington must have existed before the alleged fraud or fraudulent misrepresentation was made. Thus, Kim must allege facts supporting a partnership, agency relationship, or another basis for liability between Mendenhall and the Moores to impute § 523(a)(2)(A) nondischargeability upon Mendenhall.

The Amended Complaint fails to allege any facts supporting a pre-existing relationship under state law would hold Mendenhall liable for the actions of the Moores, Exterior Oregon, or Exterior Washington. Instead, Kim's sole theory of recovery against Mendenhall is that Mendenhall, by incorporating Exterior Washington, "allowed" the Moores to conduct business as Exterior Washington, which business harmed Kim. Such an allegation is wholly insufficient to support the existence of a partnership or a principal-agent relationship. *See Matsumura v. Eilert*, 74 Wn. 2d 362, 363, 444 P.2d 806, 807 (1968) ("Before the sins of an agent can be visited upon his principal, the agency must be first established."). Although the Amended Complaint does not make an express allegation of a principal-agent relationship between Exterior Washington and the Moores, looking at the allegation in the light most charitable to the nonmoving party, the Court views the Amended Complaint as alleging that the Moores were agents of Exterior Washington for the purposes of the 12(b)(6) Motion.

Even if the Court assumes an agency link between the Moores and Exterior Washington, this link does not impute liability to Mendenhall but to Exterior Washington. Absent an additional alleged link between the Moores and Mendenhall, liability for any potential fraud or intentional misrepresentation that the Moores committed in relation to Kim would attach to Exterior Washington—not Mendenhall as the sole member of Exterior Washington. *See* RCW 25.15.126 ("[N]o member or manager of a limited liability company is obligated personally for any such debt, obligation, or liability of the limited liability company solely by reason of being or acting as a member or manager respectively

of the limited liability company"); RCW 25.15.061 ("Members of a limited liability company are personally liable . . . to the extent that shareholders of a Washington business corporation would be liable in analogous circumstances.").[5]

In sum, at best, the Amended Complaint may be construed to allege a connection between the Moores and Exterior Washington in relation to the work performed for Kim as its agents, but not between the Moores and Mendenhall. Thus, Kim has not pleaded a cognizable claim that may be imputed to Mendenhall upon which this Court may grant relief. Accordingly, the Court grants Mendenhall's 12(b)(6) Motion.

**D. Further Amendment Cannot Cure the Amended Complaint**

Generally, FRCP Rule 15 advises the court that "leave shall be freely given when justice so requires." FRCP 15(a); *see also Kubick*, 171 B.R. at 660. Although leave to amend should be given freely, a court may dismiss without leave where amendments would not cure the pleading deficiencies and would be futile. *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (per curiam). Leave has already been granted once in this case, and the Amended Complaint failed to address the identified deficiencies sufficient to survive the 12(b)(6) Motion. Kim has had over three years to discover and develop facts that show fraud or fraudulent misrepresentations in connection with the work performed on her home. She has failed to do so. In this Court's general experience, such events show that the facts available simply do not support a fraud or intentional fraudulent misrepresentation claim under § 523(a)(2)(A) that can be imputed to Mendenhall. Additionally, given the many fundamental defects in the Amended Complaint, the Court holds that leave to amend a second time would not cure such deficiencies and would be futile. *See Cervantes v. Countrywide Home Loans, Inc.*, 656

---

[5]. While under certain circumstances, such corporate veil may be pierced, such claims are difficult to prove, especially in a case such as this where several other hurdles must be addressed to show a plausible claim for relief. See generally *Chadwick Farms Owners Ass'n v. FHC LLC*, 166 Wn.2d 178, 199, 207 P.3d 1251 (2009); *see also Northgate Ventures LLC v. Geoffrey H. Garrett PLLC*, 10 Wn. App. 2d 850, 866, 450 P.3d 1210, 1219 (2019).

F.3d 1034, 1041 (9th Cir. 2011) (Holding that leave to amend would be futile because the plaintiffs could not state a plausible basis for relief.).

## IV. Conclusion

In conclusion, the Court holds that Kim's Amended Complaint does not sufficiently plead fraud with particularity as required by FRCP 9(b) and that the Amended Complaint fails to state a claim upon which the Court may grant relief against Mendenhall under § 523(a)(2)(A). The Court holds that further amendments would not cure the significant deficiencies in the Amended Complaint and would be futile. Accordingly, the Court grants Mendenhall's 12(b)(6) Motion and dismisses Kim's complaint with prejudice.

/ / / End of Memorandum Decision / / /